

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00107-CV

_____

S. WILT, Appellant

V.

CITY OF GREENVILLE POLICE DEPARTMENT, Appellee

On Appeal from the County Court at Law #1
Hunt County, Texas
Trial Court No. CC1000325

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The City of Greenville Police Department (City) towed S. Wilt's vehicle from his real property after stopping him for a traffic offense. Wilt sued the City to recover the costs charged to him for the towing—the sum of $126.65—asserting that the City did not have probable cause to tow his vehicle.

After Wilt was the first and only witness[1] in his case in chief in a bench trial de novo before County Court at Law Number 1 of Hunt County, the City was awarded a directed verdict. Wilt appeals from that directed verdict.[2]

Because, under the standard of review of a directed verdict, there was evidence of probative force to at least raise a fact issue on Wilt's claim to allow the claim to survive a motion for directed verdict, we must reverse the directed verdict and remand this cause to the trial court for further proceedings.

A trial court's directed verdict is reviewed de novo. *John v. Marshall Health Servs.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied) (citing *Knorpp v. Hale*, 981 S.W.2d 469, 471 (Tex. App.—Texarkana 1998, no pet.)). When reviewing the directed verdict in this

---

[1]A written statement from a neighbor was admitted as Plaintiff's Exhibit 1 and was stipulated to by the City. That statement included a sentence, "When they pulled [Wilt] over he was on his property at 732 Forrester St, Greenville, TX." Also admitted, marked as Plaintiff's Exhibit 2, was a document titled "Criminal Trespass Notice" and dated April 8, 2010, directed from Wilt describing as his own property 730, 732, and 734 Forrester Street in Greenville, a notice endorsed by Officer Herron, the same officer that stopped Wilt and directed that his vehicle be towed.

[2]Citing the low amount in controversy, the City declined to file a formal brief, but asserted in a letter that probable cause to tow was supplied by the fact that Wilt's home address was different from the address from which the vehicle was towed.

case, we must consider the evidence in the light most favorable to Wilt, disregarding all contrary evidence and inferences, and giving Wilt the benefit of all reasonable inferences raised by the evidence. *Id.* (citing *Qantel Bus. Sys. v. Custom Controls Co*., 761 S.W.2d 302, 303 (Tex. 1988)). If there is any evidence of probative force to raise a fact issue on the material question of probable cause, a directed verdict is improper. *Id.*

City of Greenville Police Officer Herron stopped Wilt for a traffic violation. After driving a short distance, Wilt finally came to rest in the driveway of a house he owned, but did not live in, in Greenville. The officer arrested Wilt for the traffic violation. Because Wilt's driver's license address reflected that he lived in nearby Quinlan, Texas, and Wilt confirmed his residence as the Quinlan address, the officer towed Wilt's vehicle from his property.

Alleging that the vehicle was improperly towed, Wilt requested a "Tow Hearing" pursuant to Chapter 2308 of the Texas Occupations Code, listing the City as the respondent. Wilt complained that, because he had previously filed a "trespass complaint" with the City proving he owned the Greenville house and told the officer the house was his, the officer should not have towed the vehicle.

Greenville City ordinances authorize police officers to tow vehicles under certain circumstances. Greenville, Tex., Ordinance Sec. 6.07.008 (1990). "When a vehicle is towed pursuant to a police pull, the owner of said vehicle shall be afforded the right to a hearing as provided in Texas Transportation Code, chapter 685." Greenville, Tex., Ordinance Sec.

6.07.011(a) (1990). Chapter 685 of the Texas Transportation Code was renumbered as Chapter 2308 of the Texas Occupations Code. Section 2308.452 states that the owner of a vehicle "that has been removed and placed in a vehicle storage facility . . . without the consent of the owner or operator of the vehicle is entitled to a hearing on whether probable cause existed for the removal and placement." TEX. OCC. CODE ANN. § 2308.452 (Vernon Supp. 2010).

The primary issue at a hearing conducted under Chapter 2308 is whether probable cause existed for the removal and placement of the vehicle. TEX. OCC. CODE ANN. §§ 2308.451–.452 (Vernon Supp. 2010). Jurisdiction to conduct these probable cause tow hearings is given to the justice of the peace[3] or magistrate in the jurisdiction from which the vehicle was removed. TEX. OCC. CODE ANN. § 2308.453 (Vernon Supp. 2010). If the court conducting the hearing finds there was probable cause for the authorization of the removal and storage of the vehicle, the "person who requested the hearing shall pay the costs of the removal and storage." TEX. OCC. CODE ANN. § 2308.451(a). On the other hand, if the court finds no probable cause for the removal and storage of the vehicle, "the towing company, vehicle storage facility, or parking facility owner or law enforcement agency that authorized the removal shall" pay the costs of removal and storage or reimburse the owner or operator for removal and storage costs already paid by the owner or operator. TEX. OCC. CODE ANN. § 2308.451(b).

---

[3]The justice of the peace presiding over the initial hearing concluded that "probable cause existed for removal and impoundment of [Wilt's] vehicle." Wilt appealed this decision to the trial court from which this appeal is taken. That court, after presentation of only Wilt's case in chief, entered judgment in favor of the City on the directed verdict motion of the City.

Probable cause, in the context of a tow hearing, "exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found."[4]  *Senter v. City of Dallas*, No. 05-05-01416-CV, 2006 WL 3218548, at \*2 (Tex. App.—Dallas Nov. 8, 2006, no pet.) (citing *Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.)).   Under City of Greenville ordinances, an officer is also authorized to impound a vehicle "[w]hen any vehicle is otherwise legally parked so as to block the entrance to any private driveway" or "[w]hen any such officer arrests any person driving or in control of a vehicle for an alleged offense and such officer is by this article or other law required to take the person arrested immediately before a magistrate and it is unsafe to leave the vehicle unattended at the scene."   Greenville, Tex., Ordinance Sec. 6.07.008(2), (6).   Probable cause "is a flexible, common sense standard requiring only a probability of suspect activity rather than an actual showing of such activity."  *Id.*   Under the "totality of the circumstances" approach, law enforcement officers are permitted to draw logical inferences and make intelligent deductions from the totality of the circumstances.  *Id.* (citing *Jackson v. State*, 745 S.W.2d 4, 10 (Tex. Crim. App. 1988)).

The only evidence at trial came from Wilt's testimony and two exhibits admitted into evidence, one of which was stipulated.   No contrary evidence or testimony was presented.   From

---

[4]The City argues that, because Wilt requested the tow hearing, the burden of proof was on him.   TEX. OCC. CODE ANN. § 2308.458  (Vernon Supp. 2010).   While correct, the uncontested evidence was that the officer towed the vehicle from Wilt's driveway when there was no evidence requiring the vehicle to be towed.

Wilt's presentation of his case in chief, there was no evidence of any articulable facts that would cause the officer to believe—and in fact no evidence that the officer did believe—the instrumentality of a crime or evidence of a crime would be found if he towed the vehicle. Wilt was arrested for a traffic offense. Although the officer could tow the vehicle if it blocked "the entrance to any private driveway," the only evidence during Wilt's case in chief was to the effect that the property belonged to Wilt and that Wilt notified the officer of that fact.

The officer would have been authorized to tow the vehicle on still another basis; that is, if he was required to take Wilt immediately before a magistrate and it was unsafe to leave the vehicle unattended at the scene. During Wilt's case in chief, however, no evidence was adduced of either of those conditions.

A person arrested for a misdemeanor traffic violation is required to be taken immediately before a magistrate if arrested on a charge for failure to stop in the event of an accident causing damage to property, if he or she demands an immediate appearance before the magistrate, or if he or she refuses to make a written promise to appear in court. TEX. TRANSP. CODE ANN. § 543.002 (Vernon 1999). By the time the trial court granted the City's motion for directed verdict, there had been no evidence supporting any of those alternatives. Other than Wilt's testimony that he was arrested for a misdemeanor "Class C fineable offense," the record does not clarify the nature of the traffic offense.

There was evidence that the real property from which the vehicle was towed was not

occupied by any individual. But for that evidence, nothing suggests any danger in leaving the vehicle there, untowed. No evidence in this record establishes the type of neighborhood or that there would be any expected danger of a parked car in those environs.

We are required to review the grant of a motion for directed verdict, such as this one, by viewing the evidence in a light most favorable to Wilt. Because we are guided by the standard of review, we view Wilt's evidence as at least raising a fact issue. We sustain Wilt's point of error.

Accordingly, we reverse the trial court's judgment and remand for proceedings consistent with our opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:     April 26, 2011
Date Decided:       April 29, 2011